## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| IN RE: | **THOMAS W. OLICK** | : | **Chapter 13** |
| | | : | |
| | **Debtor** | : | **Bky. No.  07-10880 ELF** |
| | | : | |
| **THOMAS W. OLICK,** | | : | |
| | | : | |
| | **Plaintiff** | : | |
| | | : | |
| **v.** | | : | |
| | | : | **Adv. No. 12-0631** |
| **NORTHAMPTON COUNTY,** | | : | |
| | | : | |
| | **Defendant** | : | |
| | | : | |

# O P I N I O N

## I.  INTRODUCTION

Thomas Olick ("the Debtor") filed a chapter 13 bankruptcy case on February 9, 2007. His chapter 13 plan was confirmed and he performed his obligations under the plan.  He received a chapter 13 discharge on March 6, 2012.

The Debtor's bankruptcy case remains open in 2014, more than seven (7) years after it was filed and more than two and one-half (2 ½) years after the entry of his chapter 13 discharge, because the Debtor has filed at least sixteen (16) adversary complaints in this court since March 2007 in connection with the main bankruptcy case.  Nine (9) of the seventeen (17) adversary complaints were filed prior to his March 6, 2012 discharge; at least seven (7) were filed after the entry of the discharge, the last one as recently as July 17, 2014.

More than half of the lawsuits the Debtor has filed in this court since 2007 involve the

1

same issue  –  whether certain taxing authorities and governmental officials are violating

bankruptcy law and Pennsylvania law in their attempts to collect real estate taxes they claim are

due on several properties the Debtor owns.  The adversary proceeding <u>sub judice</u> is one such

lawsuit.[1]

This adversary proceeding was filed on October 11, 2012, more than six (6) months after

the entry of his discharge.  The Debtor's prime contention is that Defendant Northampton

County ("the County") violated the terms of his confirmed and completed chapter 13 plan and

the terms of a settlement in a prior adversary proceeding by attempting to collect certain

prepetition real estate taxes.  He also claims that the County's collection efforts violate

Pennsylvania law.

Presently before the court is the County's motion for summary judgment ("the Motion").

As explained below, based on the evidence in the summary judgment record, there are no

disputed issues of material fact.  The record establishes that the County has **<u>not</u>** been attempting

to collect taxes that fell due before the Debtor filed his bankruptcy case and that were provided

for in his chapter 13 plan.  Therefore, as a matter of law, the County's actions did not violate the

Debtor's chapter 13 plan.  As for the Debtor's claims based on the settlement of the prior

---

[1]      The completion of the administration of this chapter 13 case has been delayed not only by the sheer volume of duplicative adversary litigation that the Debtor has initiated, but also by the Debtor's propensity for filing appeals.  The Debtor has filed at least (7) notices of appeal to the district court from various orders entered by the bankruptcy court in the post-2007 adversary proceedings.  He also has taken unsuccessful appeals to the Court of Appeals that have resulted in three (3) reported decisions affirming the rulings of the district court and the bankruptcy court, <u>see</u> <u>In re Olick</u>, 2014 WL 2979273 (3d Cir. July 3, 2014) (per curiam); <u>In re Olick</u>, 504 F. App'x 189 (3d Cir. Nov. 16, 2012) (nonprecedential); <u>In re Olick</u>, 498 F. App'x 153 (3d Cir. Sept. 21, 2012) (nonprecedential).  The Debtor also has sought review in the U.S. Supreme Court in two (2) of the adversary proceedings.  The Court denied <u>certiorari</u> in both cases.  <u>See</u> <u>Olick v. Kearney</u>, 134 S. Ct. 59 (2013); <u>Olick v. Northampton County Tax Claim Bureau</u>, 134 S. Ct. 95 (2013).

adversary proceeding and the other state law claims, this court lacks subject matter jurisdiction to consider them.

Accordingly, I will grant the Motion and enter judgment in the County's favor on the Debtor's claim for enforcement of his confirmed chapter 13 plan and dismiss all of his other claims for lack of jurisdiction.

## II. <u>PROCEDURAL  HISTORY</u>

### A.  The Settlement With the Other Defendants

As stated above, the Debtor commenced this bankruptcy case on February 9, 2007.  His chapter 13 plan was confirmed on January 22, 2008 and he received a chapter 13 discharge on March 6, 2012.  Six (6) months after the entry of his discharge, on October 11, 2012, the Debtor initiated this adversary matter by filing a complaint against the City of Easton, the County, Portnoff Law Associates, LTD, Sal Panto, Howard White and William Murphy.

On December 13, 2012, I held a hearing to consider whether the court should dismiss the adversary proceeding for lack of subject matter jurisdiction or to abstain from hearing the matter, as well as discuss the possibility of a settlement.  The Debtor and all of the Defendants other than the County ("the Other Defendants") attended the hearing.  At that time, the Plaintiff and the Other Defendants reached a global settlement encompassing a resolution of the claims in the adversary proceeding as well as two (2) other related proceedings (Adv. Nos. 12-444 and 12-628).  (Doc. #13).  No settlement between the Debtor and the County was reached.

### B.  The Rule 12(b) Motions

3

On March 7, 2013, the County filed a motion to dismiss the adversary to which the Plaintiff responded on April 6, 2013.  (Doc. #'s 36, 53, 57 & 62).  On June 5, 2013, I dismissed the Complaint, but granted the Debtor leave to file an amended complaint.  (Doc. #70).  The Debtor filed an Amended Complaint against the County on June 14, 2013.  (Doc. #74).

In the Amended Complaint, the Debtor asserted claims for:

    (1)  relief under 11 U.S.C. §362(k);

    (2)  breach of contract; and

    (3)  fraud, negligence and conversion.

On July 9, 2013, the County filed a motion to dismiss the Amended Complaint, to which the Debtor responded on July 23, 2013.  (Doc. #'s 76, 77).  On August 7, 2013, I granted in part and denied in part the motion to dismiss the Amended Complaint.  (Doc. #78).

I dismissed the Plaintiff's §362(k) claim because, as a matter of law, the automatic stay had terminated before any of the events described in the Amended Complaint had occurred. However, at the same time, I also determined that the Plaintiff's §362(k) claim should be construed as a request for relief under 11 U.S.C. §105(a) to enforce the terms of the Debtor's confirmed chapter 13 plan and, as such, stated a valid claim for purposes of Fed. R. Civ. P. 12(b)(6).[2]

---

[2]    In the August 7, 2013 Order, I explained:

> Although the automatic stay was not in effect when Defendant County of Northampton made its demand for payment  . . .  that does not necessarily mean that the Plaintiff has failed to state a valid claim against the Defendant or that the Complaint must be dismissed. A chapter 13 debtor may seek relief from the bankruptcy court to enforce the terms of a confirmed plan pursuant to 11 U.S.C. §105(a). See, e.g., In re Padilla, 389 B.R. 409, 423-31 (Bankr. E.D. Pa. 2008). That is exactly what this pro se plaintiff is alleging here: that his chapter 13 plan
> (continued...)

I dismissed the breach of contract claim, which was based on a settlement agreement between the parties in an earlier adversary proceeding (Adv. No. 08-264). I did so because the express terms of the agreement "provided only the equivalent of a release to the Plaintiff . . . [and] no affirmative remedy in the event that the Defendant undertook prohibited collection activity." (Order dated August 7, 2013, at n.3; Doc. #78).

I dismissed the fraud, negligence and conversion claims because they were not accompanied by factual allegations sufficient "to state a claim that is plausible on its face." (Id. at n.4) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The August 7, 2013 Order authorized the Debtor to file a Second Amended Complaint with respect to the relief requested under the Bankruptcy Code (i.e., the claim originally styled as a §362(k) claim and construed as a §105(a) claim) and the inadequately pled fraud, negligence and conversion claims.[3] The Debtor filed a Second Amended Complaint on September 9, 2013. (Doc. #100).

In the Second Amended Complaint, the Debtor stated two (2) counts: (1) 11 U.S.C.

---

[2](...continued)

> provided for the payment and full satisfaction of the Defendant's pre-petition tax claims, that his plan was confirmed, that he performed his plan, that the Defendant received full payment of the claim and that the Defendant subsequently attempted to collect the same debt again, in violation of his chapter 13 plan. In the circumstances presented here, I consider it appropriate to construe the Amended Complaint liberally to state a claim for equitable relief under §105(a).

(Order dated August 7, 2013, at n.2) (Doc. #78).

[3]      On August 14, 2013, I amended the August 7, 2013 Order to correct a clerical error. (See Doc. #84). The amendment is not material to the present matter.

5

§§105 & 1327 and (2) fraud, negligence and conversion.[4]  The County did not seek dismissal of

the nonbankruptcy claims, but instead filed an Answer on October 17, 2013.  (Doc. #108).

### C.  The Summary Judgment Motion

On February 10, 2014, the County filed the Motion. (Doc. #175).  After requesting and

receiving an extension of time to file a response, the Debtor filed a brief in opposition to the

Motion on June 27, 2014. (Doc. #'s 200 & 201).  I also granted the County an extension of time

to file a reply in support of the Motion.  The County's reply was filed on July 18, 2014.  (Doc.

#205).  The matter is now ready for disposition.

## III.  SUMMARY  JUDGMENT  STANDARD

The legal standard for the entry of summary judgment under Fed. R. Civ. P. 56,

incorporated into bankruptcy adversary proceedings by Fed. R. Bankr. P. 7056, is well

established.  Summary judgment is appropriate only when, drawing all reasonable inferences in

favor of the nonmoving party, there is no genuine issue as to any material fact and the moving

party is entitled to judgment as a matter of law.  E.g., Tri–M Group, LLC v. Sharp, 638 F.3d 406,

415 (3d Cir. 2011); In re Bath, 442 B.R. 377, 387 (Bankr. E.D. Pa. 2010).  In other words,

summary judgment may be entered if there are no disputed issues of material fact and the

---

[4]      The Debtor's claim for breach of contract (based on the alleged violation of the settlement agreement reached in a prior adversary proceeding) was dismissed without leave to amend and was not raised in the Second Amended Complaint.  Nevertheless, the Debtor continues to raise this claim in his response to the Motion.  Putting aside that, strictly speaking, this claim is not before the court, as a practical matter, it is co-extensive with the Debtor's claim for violation of the confirmed chapter 13 plan.  Nevertheless, because the County responded to the Debtor's arguments that were based on this claim, and for sake of completeness, I address it in Part VI.C.2, infra.

undisputed facts would require a directed verdict in favor of the movant.  See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).

In evaluating a motion for summary judgment, the court's role is not to weigh the evidence, but to determine whether there is a disputed, material fact for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  A genuine issue of material fact is one in which sufficient evidence exists that would permit a reasonable fact finder to return a verdict for the non-moving party.  Id. at 248.  The court must view the underlying facts and make all reasonable inferences therefrom in the light most favorable to the party opposing the motion. Montone v. City of Jersey City, 709 F.3d 181, 189 (3d Cir. 2013).  On the other hand, if it appears that the evidence "is so one-sided that one party must prevail as a matter of law," the court should enter judgment in that party's favor.  Anderson, 477 U.S. at 252.

As a threshold matter, the moving party's initial burden is to demonstrate that there are no disputed issues of material fact.  E.g., U.S. v. Donovan, 661 F.3d 174, 185 (3d Cir. 2011); Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  How the movant meets this burden and how the respondent may rebut the movant's showing is affected by the allocation of the evidentiary burden of persuasion if the dispute were to proceed to trial.

Here, the County (the moving party) does not have the burden of proof at trial. Therefore, it may establish the absence of a disputed issue of material fact and grounds for summary judgment one (1) of two (2) ways:  First, and most simply, if the County presents evidence establishing that the undisputed facts negate at least one (1) element of the Debtor's claims, it is entitled to summary judgment.  See Quaker State Minit–Lube, Inc. v. Fireman's Fund Ins. Co., 868 F. Supp. 1278, 1287 n.5 (D. Utah 1994).  Alternatively, the County may

7

obtain summary judgment by demonstrating that the Debtor lacks evidence to support an

essential element of its claim.  See, e.g., Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366

(3d Cir. 1996); In re Polichuk, 506 B.R. 405, 421-22 (Bankr. E.D. Pa. 2014).

In this case, the two (2) approaches overlap.  The County seeks summary judgment

asserting that, not only that the Debtor lacks evidence to support essential elements of his claims,

but also that evidence it has presented actually disproves elements of his claim.  More

specifically, the County argues that the record negates the central fact the Debtor asserted, i.e.,

his claim that the County has attempted to collect prepetition taxes that were provided for (and

paid off) in the Debtor's chapter 13 plan.


## IV.  SUMMARY  JUDGMENT  RECORD

The Motion is supported by the detailed affidavit of Nancy J. Poplawski, a Revenue

Manager for the County ("the First Poplawski Aff.") and thirteen (13) attached exhibits, all of

which are referenced in the Affidavit.

In his initial response to the Motion, the Debtor filed two (2) rambling, overlapping

responses, one (1) styled as an "Answer," the other as a "Brief" and attached several documents

to each.  (Doc. #'s 200, 201).  These responses consist of a mixture of legal argument,

conclusory denials as to the accuracy of the First Poplawski Aff., inflammatory charges[5] and

---

[5]       For example, early in the Answer, the Debtor states that not only are the statements in the
First Poplawski Aff. incorrect, but even worse "***ARE WILLFUL AND INTENTIONAL
MISREPRESENTATIONS DESIGNED TO COMMIT FRAUD UPON THE COURT AND THE
[DEBTOR].***"  (Debtor's Answer to Motion for Summary Judgment at 4; Doc. #201) (emphasis in
original).

occasional factual representations.

Along with its Reply Memorandum, the County submitted a second affidavit from Ms. Poplawski ("the Second Poplawski Aff."), which was intended to clarify certain representations in the First Poplawski Aff.  The Debtor's Sur Reply largely rehashes the material he previously submitted.[6]

In addition to this material, I have considered docket entries and documents filed in the main bankruptcy case and adversary proceedings which are subject to judicial notice.[7]

## V. <u>STATEMENT OF UNDISPUTED FACTS</u>

This dispute centers on the County's tax collection efforts with respect to two (2) properties located in Easton, PA.  The first is a vacant lot located at 1209-1215 Chidsey Street ("the Chidsey Lot Property").  The second property, which has a residential structure which the Debtor leases to tenants, is located at 1220-22 Chidsey Street ("the Chidsey Rental Property"). Playing a lesser role in the dispute is a third property, 4014 Crestview Avenue, also in Easton, PA ("the Crestview Residence"), the property in which the Debtor actually resides.

Based on the summary judgment record developed by the parties,[8] the following facts are

---

[6]     The Debtor signed the Answer, Brief and Sur Reply under penalty of perjury.  To that extent, the responses are in technical compliance with Fed. R. Civ. P. 56(c)(1)(A).

[7]     The court may take judicial notice of the dockets and the content of the documents filed in the bankruptcy case for the purpose of ascertaining the timing and status of events in the case and facts not reasonably in dispute.  <u>See</u> Fed. R. Evid. 201; <u>In re Scholl</u>, 1998 WL 546607, at * 1 n.1 (Bankr. E.D. Pa. Aug. 26, 1998); <u>see also</u> <u>In re Indian Palms Assocs., Ltd.</u>, 61 F.3d 197, 205 (3d Cir.1995).

[8]     Evidence that is inadmissible at trial may not be considered at summary judgment.  <u>See</u>
(continued...)

not in dispute.

## A.  The Bankruptcy Case and the Debtor's Properties

1.   On February 9, 2007, the Debtor filed a chapter 13 bankruptcy petition in this court.

2.   As of the commencement of his bankruptcy case on February 9, 2007, the Debtor was the

record owner of two (2) properties: the Crestview Residence and the Chidsey Rental

Property.

3.   As of the commencement of his bankruptcy case on February 9, 2007, the Debtor did **not**

have any interest in the Chidsey Lot Property.  Rather, the Olick Family Trust ("the Family

Trust") owned the Chidsey Lot Property.[9]

---

[8](...continued)
Fed. R. Civ. P. 56(c)(2), (4).  In his Answer to the Motion, the Debtor argues that the First Poplawski Aff. should be disregarded as inadmissible hearsay.  (Debtor's Answer to Motion for Summary Judgment at 6; Doc. #201).  However, the premise of the Debtor's argument is incorrect.  The evidence in the First Poplawski Aff. that he asserts is hearsay would be admissible at trial based on an exception to the hearsay rule.  See Fed. R. Evid. 803(8).

The Debtor also complains that the First Poplawski Aff. includes legal opinions that do not constitute admissible evidence.  The same is equally true of much of the Debtor's responses.  To the extent that the submissions of both parties include statements that are properly characterized as legal argument rather factual representations, I have disregarded them in identifying and setting out the undisputed facts.

[9]    The County conveyed the Chidsey Lot Property to the Family Trust pursuant to a Tax Claim Unit Deed filed with the the County Recorder of Deeds on March 24, 2003. (First Poplawski Aff. ¶27, Ex. I).  Therefore, on  February 9, 2007, when the Debtor filed this bankruptcy case, he had no interest in the Chidsey Lot Property.  In his capacity as Trustee of the Family Trust, the Debtor conveyed 5% of the Chidsey Lot Property to himself in July 2009, more than two (2) years after the commencement of the bankruptcy case and more than one (1) year after the confirmation of his chapter 13 plan. (Second Poplowski Aff., ¶10).  Three (3) years later, in September 2012, the Debtor, again in his capacity as Trustee of the Family Trust, conveyed the remaining 95% of the Chidsey Lot Property to himself.  (Id.; First Poplawski Aff., ¶28, Ex. J;).

The Debtor attempts to gloss over his family's initial decision to title the Chidsey Lot
(continued...)

4.      On Schedule A, the Debtor listed his ownership of only one (1) property, the Crestview

Residence, omitting his ownership of the Chidsey Rental Property.[10]

5.      As of the filing of the commencement of the bankruptcy case, the Family Trust owed

$271.71 in delinquent real estate taxes on the Chidsey Lot Property.  (First Poplawski Aff.,

¶31 & Ex. K attached thereto).

### B.  The Proofs of Claim for the Crestview Residence and the Chidsey Rental Property

6.      The deadline for filing proofs of claim in the Debtor's chapter 13 case was August 7, 2007.

(See Bky. No.  07-10880, Doc. #48).[11]

7.      On August 6, 2007, the County, acting through the Northampton County Tax Claim Bureau

("the County Tax Claim Bureau),[12] filed Proof of Claim No. 7 ("Claim No. 7") in the

amount of $1,881.79 for unpaid real estate taxes together with costs, penalties and interest

---

[9](...continued)
Property in the name of an artificial entity, the Family Trust, claiming that it was part of his bankruptcy estate because of his beneficial interest in the Trust.  This is incorrect.  Only his interest in the Family Trust was included in the bankruptcy estate; the bankruptcy estate did not include the actual assets owned by the Trust.  See Fowler v. Shadel, 400 F.3d 1016, 1019 (7th Cir. 2005); Manson v. Friedberg, 2013 WL 2896971, at *3-4 (S.D.N.Y June 13, 2013).

[10]      The Debtor points out that he filed amendments to his bankruptcy schedules.  He fails to mention, however, that none of those amendments disclosed his ownership of the Chidsey Rental Property.

[11]      Henceforth, in this Opinion, I will refer to documents from the docket of the main bankruptcy case as "Bky. Doc. #."

[12]      The County Tax Claim Bureau is authorized by statute, the Real Estate Tax Sale Law, 72 P.S. §5860.101 et seq., to act as the County's agent in collecting delinquent real estate taxes.  See 72 P.S. §5860.208.

related to those taxes that accrued against the Crestview Residence as of the commencement of the case.

8. The unpaid taxes referenced in Claim No. 7 were for tax years 2006 and 2007.

9. On August 6, 2007, the County also filed Proof of Claim No. 8 ("Claim No. 8") in the amount of $5,952.84 for unpaid real estate taxes together with costs, penalties and interest related to those taxes that accrued against the Chidsey Rental Property as of the commencement of the case.

10. The unpaid taxes referenced in Claim No. 8 were for tax years 1995, 1996, 2004, 2006, and 2007.

11. The County did **not** file a Proof of Claim in the Debtors' bankruptcy case with respect to the delinquent real estate taxes on the Chidsey Lot Property.[13]

## C.  The Debtor's Claims Objection

12. The Debtor filed an objection to Claim Nos. 7 and 8 on August 9, 2007 ("the Objection").

13. By Order dated October 10, 2007, this court sustained in part and denied it in part the Objection to Claim No. 7, allowing the Claim No. 7 in the amount of $1,553.82.  (Bky. Doc. #128).  In the same order, the court sustained the Objection to Claim No. 8 in its entirety and disallowed Claim No. 8.

## D.  The Plan, Confirmation and Discharge

---

[13]      The filing of proofs of claim for asserted delinquent taxes due on the Crestview Residence and the Chidsey Rental Property and the absence of a proof of claim for any delinquent taxes on the Chidsey Lot is entirely understandable.  The Debtor was the record owner of the Crestview Residence and the Chidsey Rental Property.  He was not the record owner of the Chidsey Lot Property.

14. The Debtor's Fifth Amended Chapter 13 Plan, filed on November 5, 2007 (Bky. No. 07-10880, Doc. #136) specifically identified the claims that had been filed and allowed by name and amount and provided for full payment of those claims.

15. Included among the claims specified to be paid under the terms of the Fifth Amended Chapter 13 Plan was Claim No. 7 in the amount of $1,553.82 (i.e., the proof of claim filed by the County for delinquent real estate taxes on the Crestview Residence).

16. On January 22, 2008, the Bankruptcy Court confirmed the Debtor's Fifth Amended Chapter 13 Plan.  (Id., Doc. #150).

17. Like the Debtor's bankruptcy schedules, the Debtor's confirmed plan makes no reference to the Chidsey Lot or any delinquent real estate taxes owed on that property.

18. On November 30, 2011, the Chapter 13 Trustee filed a Final Report and Account stating, inter alia, that "[t]he case was completed."  (Id., Doc. #214).

19.  The Debtor received his Chapter 13 Discharge on March 6, 2012.  (Id., Doc. #225).


### E.  Adv. No. 08-264

20. On September 22, 2008 (after confirmation, but three and one-half (3 ½) years before the Debtor received his discharge), the Debtor filed an adversary complaint in the bankruptcy court against inter alia, the County, docketed as Adv. No. 08-264.

21. In this Complaint, the Debtor asserted that the County was continuing to collect unpaid real estate taxes that were otherwise disallowed in Claim No. 8.

22. On April 21, 2009, the Debtor and the County (as well as the Northampton County Tax Claim Bureau, the City of Easton and the Easton Area School District), entered into a

stipulation of settlement ("the Settlement").  (Adv. No. 08-264, Doc. #85).

23.  In Paragraphs 10 and 11, the Settlement refers to the two (2) proofs of claim filed in the

Debtor's chapter 13 bankruptcy case: Claim No. 7 for delinquent taxes on the Crestview

Property and Claim No. 8 for delinquent taxes on the Chidsey Rental Property.

24.  The Settlement makes no reference to the Chidsey Lot Property.

25.  Paragraph 19.a. of the Settlement provided, in pertinent part:

> a.  Northampton County, the Northampton County Tax Claim Bureau  . . .  will
> not take any action of any nature to collect claims for taxes that were due as of
> the date of filing of the Chapter 13 Bankruptcy Petition and acknowledge that
> to the extent those claims are allowed, they will be fully satisfied upon receipt
> of the amounts allowed by the Bankruptcy Court from the Trustee in
> Bankruptcy.
>
> b.  Should Northampton County, the Northampton County Tax Claim Bureau
> .  .  .   take any steps to collect those prepetition claims for taxes, this
> Stipulation of Settlement will be a full defense to any such claims or
> actions  .  .  .  .

26.  The Settlement does not include any provision providing for the retention of jurisdiction by

the bankruptcy court to enforce its terms.

27.  This court approved the Settlement on June 16, 2009.


**F.  The County's Actions Following the Settlement of the Adv. No. 08-264**

28.  On June 22, 2009, shortly after the bankruptcy court's approval of the Settlement in Adv.

No. 08-264, the County Tax Claim Bureau recorded an adjustment in its records and wrote-

off all 2006 and 2007 pre-petition taxes, costs, penalties and interest associated with the

Chidsey Rental Property to comply with the amount disallowed by the bankruptcy court.

The total amount written off was $7,037.75.  (First Poplawski Aff., ¶¶14-16 &  Ex. C

attached thereto).

29.  After the adjustments were made in the County's tax records, the balance due for unpaid,

post-petition real estate taxes and related charges for the Chidsey Rental Property was

$4,884.61.  (First Poplawski Aff., Ex. C).

30.  This $4,884.61 in delinquent taxes on the Chidsey Rental Property as of June 22, 2009 is

comprised of post-petition charges from 2007-2009.[14]

31.  School District taxes for 2007, totaling $1,971.20 in taxes interest and penalties were not

written off following the Settlement.[15]

---

[14]      The following is a break down of each tax from 2007-2009 the Debtor incurred prior to the write off in June 2009 as extracted from Exhibit C attached to the First Poplawski Affidavit:

| Line | Year/ Tax | | Amount |
|------|-----------|---|--------|
| 56 | 2007 Easton Area SD Interest | $ | 94.29 |
| 71 | 2007 Easton Area SD Interest | $ | 80.82 |
| 47 | 2007 Easton Area SD Penalty | $ | 163.28 |
| 46 | 2007 Easton Area SD Tax | $ | 1,632.81 |
| 73 | 2008  County Penalty | $ | 39.10 |
| 61 | 2008  Easton Area SD Tax | $ | 1,802.07 |
| 43 | 2008 County | $ | 390.96 |
| 58 | 2008 County Cost | $ | 15.00 |
| 60 | 2008 County Cost | $ | 15.00 |
| 63 | 2008 County Cost | $ | 10.00 |
| 67 | 2008 County Interest | $ | 16.15 |
| 49 | 2008 County Penalty | $ | 39.10 |
| 62 | 2008 Easton Area SD Penalty | $ | 180.20 |
| 72 | 2008 Easton Areas SD Interest | $ | 14.87 |
| 59 | 2009 County Tax | $ | 390.96 |
| | | $ | 4,884.61 |

[15]      The County Tax Claim Bureau did not write off the School District taxes for 2007 because those taxes were levied by the School District in July 2007 (and referred to the Tax Claim Bureau for collection in April 2008), after the commencement of the Debtor's bankruptcy case.  (First Poplawski Aff., Ex. C, Line 46).

(continued...)

32. Nor did the County Tax Claim Bureau write off any taxes in connection with the Chidsey Lot Property.  (See id. & Ex. K attached thereto).

### G.  The County's Collection Efforts After the Settlement

33. By an undated Reminder Notice, sent in December 2011, the County Tax Claim Bureau gave the Debtor notice ("the 2010 Chidsey Rental Property Reminder Notice") that, as of December 9, 2011 there were delinquent real estate taxes on the Chidsey Rental Property for tax year 2010 of $2,698.59.  (First Poplowski Aff. ¶22 & Ex. G thereto).

34. By an undated Reminder Notice, sent in December 2011 the County Tax Claim Bureau gave the Debtor notice ("the 2010 Chidsey Lot Property Reminder Notice") that, as of December 9, 2011 there were delinquent real estate taxes on the Chidsey Lot Property for tax year 2010 of $891.88.  (Ex. B to Second Amended Complaint; Doc. #100).

35. On July 9, 2012, the County Tax Claim Bureau issued a Notice of Public Sale ("Tax Sale Notice") for the Chidsey Rental Property for delinquent taxes.  (First Poplawski Aff. ¶¶19-20, Ex. F; Ex. 3 to Debtor's Answer to Motion).

36. The Tax Sale Notice for the Chidsey Rental Property scheduled the sale for September 23, 2012 and stated that the "approximate upset price" is $13,568.72.

37. On July 9, 2012, the County Tax Claim Bureau issued a Tax Sale Notice for the Chidsey Lot Property.  (Ex. M to First Poplowski Aff.; Ex. 3 to Debtor's Answer to Motion).

38. The Tax Sale Notice for the Chidsey Lot Property scheduled the sale for September 23,

---

[15](...continued)

2012 and stated that the "approximate upset price" is $3,605.97.

39. The September 23, 2012 tax sales were stayed by the Court of Common Pleas.  (First

Poplowski Aff. ¶39 & Ex. H thereto).[16]


# VI.  DISCUSSION

## A.  Introduction

In this adversary proceeding, the Debtor claims that the County is trying to collect

prepetition taxes that were either (a) disallowed in connection with or (b) were provided for and

paid through his chapter 13 plan.  In effect, the Debtor contends that the County's actions violate

11 U.S.C. §1327.

Section 1327(a) of the Bankruptcy Code provides:

> The provisions of a confirmed plan bind the debtor and each creditor, **whether or not the claim of such creditor is provided for by the plan**, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(emphasis added).

Section 1327(c) of the Bankruptcy Code provides:

> Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor **provided for by the plan**.

(emphasis added).

If the facts supported the Debtor's claim, relief from the bankruptcy court to enforce 11

---

[16]    Although not directly relevant to the pending Motion, it appears that the state court stay has been lifted because the properties have been rescheduled for sale on September 23, 2014.  (See Adv. No. 14-0325, Exhibits to Complaint).  The Debtor has filed two (2) motions in this court to stay the sale, both of which were denied. (Adv. No. 14-0325, Doc #'s 18, 25).

U.S.C. §1327 is available through exercise of the court's authority under 11 U.S.C. §105(a).

Section 105(a) provides that the court may "issue any order, process, or judgment that is

necessary or appropriate to carry out the provisions of the plan."  See In re Padilla, 389 B.R. 409,

428-433 (Bankr. E.D. Pa. 2008);[17] accord In re Thomas, 497 B.R. 188, 203-04 (Bankr. E.D. Pa.

2013).

To succeed on a claim which invokes §105(a) to enforce §1327(a), a debtor must prove

that the defendant's claim was resolved in the prior bankruptcy case and that the creditor has

continued its efforts to collect that same prepetition debt.  In a case like this one, in which there

is an ongoing relationship between the parties, and claims for taxes falling due post-petition

continue to arise on a periodic basis, the most obvious way to prove that the creditor continued to

seek collection of back taxes is to identify all of the taxes that arose post-petition and produce

evidence of their payment.

In this case, the Debtor chose not to develop the record in the manner described above.

The Debtor's legal and factual theories are further muddled because he has not drawn any

distinction between the two (2) Chidsey Properties, despite their differences in ownership and

---

[17]    In Padilla, I held that a chapter 13 debtor may invoke the equitable power of the
bankruptcy court under 11 U.S.C. §105(a) to enforce the debtor's rights under 11 U.S.C. §1327(a)
because such orders are necessary and appropriate to enforce the provisions of the Bankruptcy Code and
do not override any other applicable Code provisions:

> The need for a confirmed plan to be enforceable is intrinsic to the chapter 13
> rehabilitation process. Otherwise, the confirmed plan would be a scrap of paper
> (or perhaps more accurately in today's digital age, a collection of electronic
> impulses) that creditors could disregard with impunity. Given the role of the
> confirmed plan in the chapter 13 system, the principle that a confirmed chapter
> 13 plan must be enforceable requires no extended or elaborate justification. It is
> difficult to conceive how the chapter 13 system could function if confirmed
> chapter 13 plans were not judicially enforceable.

389 B.R. at 429.

treatment in his chapter 13 bankruptcy case.  Further, each property is the subject of a separate

Tax Sale Notice and the scope of the County's collection efforts differed as between the

properties.

Thus, in order to determine whether the County's collection efforts and ultimately, the

scheduled tax sales, involve the collection of tax claims that were resolved during the Debtor's

chapter 13 case (as well as whether there are any disputed facts and whether either party is

entitled to judgment as a matter of law),[18] it is necessary to consider the record with respect to

each property separately.


## B.  The Chidsey Rental Property

The County filed a proof of claim for back taxes owed on the Chidsey Rental Property in

the Debtor's chapter 13 bankruptcy case that was disallowed.  Fact Nos. 9-10, 12-13.  Whatever

delays may have occurred in the County's recognition of the disallowance of its claim for taxes

assessed prior to February 2007 and the judicial determination that there were no such

prepetition taxes owed on that property, once the County entered into the court-approved

Settlement in Adv. No. 08-264 and adjusted its tax records (on June 22, 2009), see Fact Nos. 25,

28-30, there is nothing in the summary judgment record to suggest that the County thereafter

attempted to collect any taxes that fell due prior to February 9, 2007, the date the Debtor filed his

chapter 13 bankruptcy petition.  On their face, the County tax records in the summary judgment

record show that any Chidsey Rental Property taxes presently shown as delinquent are

---

[18]        Although the Debtor did not file a motion for summary judgment, the court has the
authority not only to deny summary judgment to a moving party, but to grant summary judgment to a
non-moving party.  See, e.g., In re Styer, 477 B.R. 584, 589, (Bankr. E.D. Pa. 2012).

attributable solely to taxes assessed after the Debtor commenced his bankruptcy case.  Standing

alone and unless rebutted by some contrary evidence creating a material issue of fact, the

County's evidence establishes that it has not attempted to collect prepetition taxes in violation of

the order disallowing Claim No. 8 or the confirmed chapter 13 plan and is entitled to judgment

as a matter of law.

The Debtor's contention that other facts show the inaccuracy of the County's records and

that the County continues to seek collection of prepetition taxes for the Chidsey Rental Property

appears to be based on his superficial and erroneous interpretation of the tax notices the County

issued in connection with the delinquent, post-bankruptcy taxes before it scheduled and gave

notice of the September 2012 tax sale.

While it is difficult to pinpoint the Debtor's exact theory among the bombast of his

rhetoric, he seems to be arguing that because the 2010 Chidsey Rental Property Reminder Notice

stated that $2,698.59 in real estate were unpaid as of December 9, 2011 and the 2012 Tax Sale

Notice stated a much higher amount (the "approximate upset price" is $13,568.72), the

difference cannot be attributable to taxes falling due between the dates of the two (2) notices,

making it obvious that the County is attempting to collect taxes that pre-date his bankruptcy

case.[19]

The Debtor's interpretation of these notices is plainly wrong.

The 2010 Chidsey Rental Property Reminder Notice stated on its face in bold print:

---

[19]      The Debtor also appears to argue he was not properly credited with a $535.10 payment
he made in February 2012.  Given his failure to distinguish between the Chidsey Rental Property and the
Chidsey Lot Property, it is difficult to discern exactly what the Debtor is trying to say.  In any event, the
record is clear that this payment was made on account of taxes owed on the Chidsey Lot Property, not the
Chidsey Rental Property.

"**THIS NOTICE DOES NOT INCLUDE INFORMATION ON DELINQUENT TAXES PRIOR TO 2010 WHICH MAY BE DUE**."  That statement alone makes it obvious that at the time the Notice was sent, additional amounts for prior tax years also may have been delinquent. Indeed, the Debtor has presented no receipts or other evidence that he paid any of the real estate taxes falling due on the Chidsey Rental Property for 2008 or 2009 other than those reflected in the County's tax records (attached as Ex. C to the First Poplowski Aff.).

By comparison, the 2012 Tax Sale Notice states the total amount of taxes due on the Chidsey Rental Property as of the date of the Notice, not merely the unpaid taxes for tax year 2010. (First Poplawski Aff. ¶19).  The County presented evidence that the total amount of taxes due when the 2012 Tax Sale Notice was issued included delinquent taxes for tax years prior to 2010, but did not include taxes assessed prior to the commencement of the Debtor's bankruptcy case in February 2007.  (See First Poplowski Aff. ¶21 & Ex. C).[20]

Simply put, the Debtor has come forward with no evidence sufficient to rebut the County's evidence and create a triable issue of fact.  At best, the 2012 Tax Sale Notice creates some ambiguity because it references only tax year 2010 while stating an upset bid price that includes other tax years.  This creates the apparent conflict between the 2012 Tax Sale Notice and the 2010 Chidsey Rental Property Reminder Notice, which leads to the Debtor's argument that the 2012 Tax Sale Notice was intended to coerce collection of his pre-bankruptcy taxes. The County, however, has explained the apparent discrepancy.  In issuing the 2012 Tax Sale Notice, it considered itself bound to refer only to tax year 2010 because it understands the law to

---

[20]      After the write-off of $7,037.75 in prepetition taxes in June 2009, the County's tax records show that $4,884.61 remained in delinquent taxes on the Chidsey Rental Property.  It is reasonable to infer that further delinquencies accrued thereafter.

be that a tax sale is not authorized until the taxes have been delinquent for two (2) years; hence, the reference to 2010 in the 2012 Tax Sale Notice.  (First Poplowski Aff. ¶20).

Whether the County has correctly stated the law in explaining the basis for the reference to 2010 in the 2012 Tax Sale Notice, in light of the other evidence demonstrating that the 2012 Tax Sale Notice was based on other tax years, all post-bankruptcy, and the absence of evidence that the Debtor fully paid the taxes falling due between the commencement of his bankruptcy case and the issuance of the 2012 Tax Sale Notice, the Notice, by itself, is insufficient to create a material issue of disputed fact.  See, e.g., Polichuk, 506 B.R. at 444 (summary judgment may be entered when, after considering the weight of the evidence, there can be only one conclusion that a reasonable factfinder can reach) (citing authorities).

In the absence of sufficient evidence to warrant a trial on the issue whether the County attempted to collect prepetition taxes due on the Chidsey Rental Property that were disallowed by the bankruptcy court in the chapter 13 case, the Debtor's claim must fail and the County is entitled to the entry of summary judgment in its favor.[21]

## C.  The Chidsey Lot Property

---

[21]      The only other minor issue is whether the 2007 School District taxes the County Tax Claim Bureau has continued to attempt to collect involve prepetition taxes that also were disallowed when the court sustained his Objection to Claim No 8.  By comparison, with respect to its tax collection efforts on behalf of other taxing authorities, the County Tax Claim Bureau has limited its efforts to taxes arising in 2008 and thereafter.  The Debtor argues that 2007 School District taxes were prepetition taxes.

This contention requires little discussion.  The 2007 School District taxes were not assessed by the School District until July 2007, several months after the commencement of the Debtor's chapter 13 case.  (Second Poplowski Aff. ¶6 & n.1).  The taxes arose post-petition and therefore, were not encompassed by the Order disallowing Claim No. 8.

At the time the bankruptcy case was filed in March 2007, there were $271.71 in

delinquent real estate taxes owed on the Chidsey Lot Property.  However, the Debtor did not

own the Chidsey Lot Property on the date he filed for bankruptcy; it was owned by the "Family

Trust."  The Chidsey Lot Property was not listed in the Debtors' bankruptcy schedules as an

asset of the Debtor (quite properly) and was not part of the Debtor's bankruptcy estate.  See Fact

No. 3 & n.9, supra.  The County did not file a proof of claim for any tax claims secured by the

Chidsey Lot Property.[22]  Nor was the Chidsey Lot property referenced in any way in the Debtor's

confirmed chapter 13 plan.

In contrast to the Chidsey Rental Property, the County freely admits that it has continued

its efforts to collect pre-petition taxes owed on the Chidsey Lot Property.  The Debtor argues that

these collection efforts are improper.  The Debtor appears to have two (2) overlapping theories

for his contention: (1) the County's  collection efforts violated the terms of the confirmed

chapter 13 plan and 11 U.S.C. §1327; and (2) the collection efforts with respect to the 2006 and

2007 tax delinquency on the Chidsey Lot Property violated the Settlement in Adv. 08-264.


## 1.  the Confirmed Plan

As a matter of law, the undisputed facts that the Chidsey Lot Property was not property

of the bankruptcy estate and no claims against it were addressed in the Debtor's confirmed

chapter 13 doom the Debtor's §1327/§105 claim.

As I explained in In re Thomas, 497 B.R. at 204-05,

---

[22]        The City of Easton filed such a claim, but the City taxes and the City's conduct is not at
issue here.  The Debtor settled his dispute with the City.

> It is true that §1327(a) does not require that a claim be "provided for" in a plan
> for the plan to bind a creditor.  However, the legal principle that a plan is binding
> on a creditor necessarily contemplates that plan include some provision that
> addresses, affects or restricts the creditor's rights in some fashion.[23]

 As in <u>Thomas</u>, because the Debtor's confirmed plan did not address any claim for taxes

on the Chidsey Lot Property, the controlling legal principle is that if a lien is not addressed and

treated in some fashion during the course of a bankruptcy case  – either by being provided for in

a reorganization plan or avoided pursuant to a Code avoidance power  – it passes through the

bankruptcy case unaffected and that post-bankruptcy actions to enforce the lien do not violate

any provision of the Bankruptcy Code.  <u>See, e.g.</u>, <u>Cusato</u>, 485 B.R. at 828 (citing authorities,

including <u>Lellock v. Prudential Ins. Co. of America,</u>, 811 F.2d 186, 189 (3d Cir. 1987)).

Despite his contention otherwise (<u>see</u> Debtor's Br. in Opp'n.), the Debtor  never

exercised any affirmative action to extinguish or modify any lien on the Chidsey Lot Property.

Consequently, any and all liens on the Chidsey Lot Property passed through the bankruptcy case

unaffected.  The County's collection efforts did not violate the confirmed plan.

## 2.  the Settlement in Adv. No. 08-264

The Debtor also argues that the Chidsey Lot Property was part of the Settlement in Adv.

No. 08-264 and, therefore, the County's collection of the 2006 and 2007 taxes was a breach of

the Settlement.

---

[23]       A plan might also provide that a creditor's rights are not being altered or impaired in any
way.  In some sense, that is "providing for" a claim.  But, such a plan provision would leave the creditor's
lien in place.  <u>See also</u> <u>In re Cusato</u>, 485 B.R. 824, 833 (Bankr. E.D. Pa. 2013) (property rarely revests
free and clear of all liens pursuant to §1327(c) following confirmation in chapter 13 cases because plans
typically provide otherwise in order to comply with the §1325(a) confirmation requirement that secured
creditors retain their liens during the pendency of the plan).

On (3) independent grounds, I disagree.

First, to the extent the Debtor is seeking to enforce the Settlement, that claim was dismissed by the Order dismissing the Amended Complaint and was not re-pled in the Second Amended Complaint, See Part II.B., supra.

Second, to the extent that the claim may be viable through trial by implied consent, see Fed. R. Civ. P.15(b)(2), the court lacks jurisdiction to consider the claim.

The exercise of subject matter jurisdiction by a bankruptcy court is governed by 28 U.S.C. §1334(b). Without setting out the entire architecture of the statutory jurisdictional scheme, suffice it to say that the exercise of bankruptcy jurisdiction requires that the dispute bear a relationship to the administration of the bankruptcy case. See, e.g., In re Bell, 476 B.R. 168, 173-74 (Bankr. E.D. Pa. 2012). If the litigation lacks that relationship, the court lacks jurisdiction to adjudicate it. See, e.g., In re Resorts International, Inc., 372 F.3d 154 (3d Cir. 2004) (citing Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d. Cir. 1984)).

Even if the Debtor's interpretation of the scope of the Settlement of Adv. 08-264 is correct (a premise that, ultimately, I reject, as explained below), the Settlement resolved issues relating to both the Chidsey Rental Property and the Chidsey Lot Property. As such, the settlement involved a resolution of issues concerning property of the bankruptcy estate (the Chidsey Rental Property) and non-estate property (the Chidsey Lot Property).

The present litigation between the parties regarding the Chidsey Lot Property was brought to the bankruptcy court after the completion of the Debtor's chapter 13 plan and the entry of his discharge and involves a dispute regarding the meaning of an agreement insofar as it affects non-estate property that was not treated in the confirmed and completed chapter 13 plan.

Even recognizing that the agreement at issue was approved by the bankruptcy court, in these circumstances, it is difficult to see the justification for the exercise of bankruptcy court jurisdiction to enforce the Settlement.[24]  This does not leave the Debtor without a forum to air his grievances.  The Settlement is  a contract and, as such, it may be enforced by a state court of competent jurisdiction.

Third, and assuming <u>arguendo</u> that this dispute regarding the scope and meaning of the Settlement Agreement falls within the bankruptcy court's jurisdiction, I conclude that the County is entitled to judgment as a matter of law.  In this respect, I reaffirm my dismissal of this claim in the Amended Complaint, but on another ground.

In the adversary complaint in Adv. No. 08-264, the Debtor made no allegations regarding the Chidsey Lot Property.  (<u>See</u> Adv. No. 08-264, Doc. #1).  The Settlement made no reference to the Chidsey Lot Property with respect to the County; the only reference to the Chidsey Lot Property pertained to the proof of claim the City of Easton filed in the bankruptcy case.[25]  <u>Id.</u>

---

[24]     Any rights the Debtor may have under the Settlement are not based on the Bankruptcy Code.  Thus, I note further that even if the sliver of a connection to the bankruptcy case sufficed to give rise to non-core, "related to" jurisdiction under 28 U.S.C. §1334(b), <u>see, e.g.</u>, <u>In re Mullarkey</u>, 536 F.3d 215, 220-21 (3d Cir. 2008), that grant of jurisdiction likely would be nullified by operation of the federal Tax Injunction Act, 28 U.S.C. §1341 because, ultimately, the Debtor is requesting that this court restrain a state taxing authority from collecting taxes that it claims are due.  <u>See generally</u> <u>Thomas</u>, 497 B.R. at 196-98.

    I note further that, with hindsight, when I granted the County's motion to dismiss the Amended Complaint, it may have been more proper to dismiss the claim based on the alleged breach of the Settlement for lack of jurisdiction, rather than on the merits.  My order in resolving the Motion will be a non-merits dismissal.  However, as explained in the text <u>infra</u>, if my jurisdictional ruling is incorrect, I am prepared to dismiss the claim on the merits.

[25]     Paragraph 7 of the Settlement stated that the City of Easton filed Claim No. 5 in the amount of $1027.53 plus 10% per annum for pre-petition taxes and interest due on <u>both</u> the Chidsey Rental and Chidsey Lot Properties.  In contrast, Paragraph 11 of the Settlement stated that the County filed Claim No. 8 in the amount of $5,952.84 for pre-petition taxes, including delinquent County taxes for
(continued...)

(emphasis added).  In describing the County's involvement in the bankruptcy case, the

Settlement refers only to the Claim Nos. 7 and 8, the claims the County filed for delinquent taxes

on the Crestview Residence and the Chidsey Rental Property.

Based on the text and structure of the Settlement, there is no basis to conclude that the

parties intended that the County would release its claims for pre-petition taxes owed against the

Chidsey Lot Property.  The Debtor has come forward with no evidence to suggest that the text of

the Settlement is ambiguous or any extrinsic evidence that would establish that the Chidsey Lot

Property tax claims were released.  See generally  Bohler–Uddeholm Am., Inc. v. Ellwood

Group, Inc., 247 F.3d 79, 92 (3d Cir. 2001).[26]

# VII.  CONCLUSION

Based on the undisputed facts and, as a matter of law, I find that the Debtor has not met

his burden and failed to raise a disputed issue of fact that the County made post-confirmation

attempts to collect pre-petition debts that were treated in his confirmed chapter 13 plan, in

violation of 11 U.S.C. §1327.  Rather, the County has shown that the Debtor lacks evidence to

support this claim.  Accordingly, the County is entitled to summary judgment.  And, this court

lacks jurisdiction to resolve the Debtor's other claims.

---

[25](...continued)
1995, 1996, 2004, 2006, 2007, delinquent City of Easton taxes for 1996, and delinquent Easton Area
School District taxes for the years 1995, 1996 and 2004 **on the Chidsey Rental Property**.

[26]    The Second Amended Complaint asserts claims for fraud, negligence and conversion.
Essentially, the Debtor's theory is that the collection efforts that violated his rights under his confirmed
chapter 13 plan and the Settlement were engaged in due to the County's negligence or fraud and has
resulted in the conversion of his property.  These claims are totally dependent upon an initial
determination that the Debtor's rights were violated under his confirmed chapter 13 plan and the
Settlement.  Because his rights were not violated, the state law claims also fail.

An appropriate Order follows.

Date:  September 16, 2014

**ERIC L. FRANK**
**CHIEF U.S. BANKRUPTCY JUDGE**